UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARGARITA HERNANDEZ,
    *Plaintiff*,

v.

DEPARTMENT OF CHILDREN AND
FAMILIES,
    *Defendant*.

No. 3:16-cv-00864 (JAM)

**RULING DENYING SUMMARY JUDGMENT**

Plaintiff Margarita Hernandez was the only Hispanic clinical psychologist at the Connecticut Juvenile Training School ("CJTS"), a facility run by the defendant, Connecticut Department of Children and Families ("DCF"). Beginning in January 2014, plaintiff began having significant workplace conflict with her new supervisor, Gail DeMarco. These conflicts eventually resulted in plaintiff's firing in January 2016, after nine months spent on administrative leave. The ostensible basis for plaintiff's suspension and termination was her violation of department policy concerning the use of personal printers. But plaintiff alleges that she was in fact the victim of racial discrimination and retaliation, in violation of Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

Defendant has moved for summary judgment. Because I find that genuine fact issues remain for a jury to decide whether defendant's proffered reason for firing plaintiff was a pretext for discrimination and retaliation, I will deny the motion.

**BACKGROUND**

The following facts are set forth in the light most favorable to plaintiff as the non-moving party. Plaintiff began her employment with the Department as a clinical psychologist in 2000.

1

Doc. #34-4 at 4. Her allegations chiefly concern the time after January 2014, when Gail DeMarco became her supervisor. Doc. #43-3 at 3 (¶ 6). Her allegations fall into six main categories.

### *The Bilingual Stipend*

When DeMarco became plaintiff's supervisor, she assigned her an excessive case load, allegedly on the basis of her Hispanic ethnic background. *Ibid*. Plaintiff had been receiving a $1,000-per-year stipend to compensate her for providing bilingual services. *Id*. at 4 (¶ 24). Plaintiff was asked to take on every case that required bilingual services, and her workload was not otherwise reduced to compensate for this. When she complained about her increased caseload, DeMarco responded by noting the stipend plaintiff received. Plaintiff then filed a formal complaint with human resources in August 2014, after which HR determined she was not meeting the requirements of the bilingual stipend and stopped giving her that stipend. *Id*. at 4 (¶¶ 22–26). Plaintiff argues that the investigation of her complaint was flawed and that the determination concerning her eligibility for the stipend was erroneous. *Id*. at 4 (¶ 27). Plaintiff later stopped performing bilingual services, *id*. at 4 (¶ 28), though she still received requests to perform bilingual services during the winter of 2014–15. *Id*. at 5 (¶ 48).

### *Comp Time and Degrading Comments*

In April 2014, DeMarco denied plaintiff the ability to use her compensation time ("comp time") as provided by the union contract. *Id*. at 3 (¶ 9). Plaintiff filed a grievance over this and prevailed. *Id*. at 4 (¶ 11); Doc. #34-4 at 27. At a department meeting the following month, DeMarco "treated [plaintiff] in a disrespectful manner in front of [her] colleagues and called [her] a liar." Doc. #43-3 at 4 (¶ 12). DeMarco accused plaintiff of holding an "organized meeting" concerning on-call policy. Doc. #34-4 at 28. Plaintiff denied this allegation, and

DeMarco said something to the effect of, "you know, you don't have to lie, you could just tell the truth." *Id*. at 28–29. Plaintiff subsequently spoke with DeMarco over the phone and told her she found her behavior disrespectful and inappropriate; DeMarco told her she was overreacting and that it ("liar") was just a word. *Id*. at 29–30.

### *Timesheets*

In June 2014, DeMarco failed to submit one of plaintiff's timesheets to the payroll department promptly, resulting in a portion of plaintiff's salary being delayed for 13 days. Doc. #34-4 at 30–31. Standard practice in the department was to submit timesheets on Wednesday, a couple days in advance of the deadline. Plaintiff's on-call day was Thursday. One day plaintiff had to work extra time on Thursday, and she submitted a revised timesheet the following morning. DeMarco allegedly failed to deliver the amended sheet to payroll, and plaintiff did not get paid for the four extra hours she had worked until 13 days later. Her regular salary was paid on time. When plaintiff confronted DeMarco about it, DeMarco said "Why are you making a big deal out of it? You found the error, it's done. Let it go," to which plaintiff responded that this was a serious matter and could well happen again. *Ibid*.

### *Transfers*

In July 2014, plaintiff was forced to move from her unit at CJTS, 4-B, to unit 6-C. Plaintiff alleges a number of irregularities as to this transfer, including failure to follow protocol as to seniority and failure to observe previous policy concerning temporary replacements for people on medical leave. *Id*. at 32–35. Plaintiff also describes a number of other attempts by DeMarco to reassign her from her assigned unit. *See id*. at 35–44. Plaintiff's July 2014 transfer did not affect her wages, benefits, hours, or opportunities for promotion. *Id*. at 37–38.

*Evaluation*

After DeMarco became plaintiff's supervisor, her evaluation was downgraded from Excellent to Good. *See* Doc. #34-4 at 53–54; *compare id*. at 51–52. Plaintiff stated in her deposition, however, that she did not receive any "unsatisfactory" ratings, and she did not suffer any tangible negative consequences from the change in her evaluation. *Id*. at 54. She does however allege that another employee, Dr. Vinceguerra, was given "excellent" ratings despite performance that was anything but excellent. Doc. #43-2 at 5.

*Termination*

Plaintiff was terminated on January 28, 2016. Doc. #34-10 at 50. Her termination letter stated as grounds for her firing her violations of the state's computer use policies, and related a sequence of events involving her use of a personal USB device on state computers, engaging in work related to private practice on state computers, and hiding an unauthorized printer in her office. *Id*. The investigation into these violations had begun in April 2015, when DeMarco and others at CJTS began to suspect that plaintiff had an unauthorized printer in her office. In the email exchanges, DeMarco and the other DCF employees expressed a gleeful anticipation at the thought of catching plaintiff in a violation, and they were also clearly aware of plaintiff's CHRO discrimination complaint, filed just six weeks prior. *See* Doc. #44-2 at 5. The investigation did in fact uncover a printer in plaintiff's office, and plaintiff was placed on administrative leave a few days later, where she remained for over nine months until her termination.

Plaintiff alleges, in essence, that the investigation into these violations was a witch hunt, that she had previously been authorized to use all of the devices in controversy, and that the

policy was enforced in a discriminatory and/or retaliatory fashion. *See* Doc. #44 at 11–13 (Statement of Additional Facts, ¶¶ 8–10, 13–14, 17, 20-21).

*Procedural History*

Plaintiff filed her initial CHRO charge on February 24, 2015. She filed an amended CHRO complaint on August 27, 2015, and a second amended complaint on February 1, 2016. The CHRO granted a release of jurisdiction on March 9, 2016, and issued a Notice of Right to Sue on May 24, 2016. Plaintiff then commenced this civil action on June 6, 2016, Doc. #1, and filed an amended complaint on June 29, 2016, Doc. #13. She alleges that these actions by defendant constituted unlawful discrimination on the basis of race and national origin in violation of Title VII of the Civil Rights Act, as well as unlawful retaliation for engaging in activity protected by Title VII. Defendant filed an answer to the complaint on August 11, 2016, and moved for summary judgment on May 25, 2017.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*); *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

*Retaliation*

Under Title VII of the Civil Rights Act, an employer may not punish or retaliate against an employee because the employee "opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). Claims for retaliation under Title VII are analyzed at the summary judgment stage under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff must present evidence sufficient to permit a rational trier of fact to find (1) that she engaged in protected activity under Title VII—*i.e.*, that she complained of or otherwise opposed some form of discrimination forbidden by Title VII; (2) that the employer was aware of this activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action. *See Zann Kwan v. Andalex Group LLC*, 737 F. 3d 834, 844 (2d Cir. 2013). If the plaintiff meets this burden and the defendant then points to evidence of a legitimate, non-retaliatory reason for the challenged employment decision, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is incomplete or merely a pretext for impermissible retaliation. *Ibid.*; *see also Henry v. Wyeth Pharm., Inc.,* 616 F.3d 134, 157 (2d Cir. 2010).

Ultimately, a Title VII plaintiff must prove that retaliation was the but-for cause of the adverse action, in other words, that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Ibid.*; *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). A plaintiff need not, however, show that the practices she opposed were actually unlawful under Title VII. Rather, so long as a plaintiff has a good faith, reasonable basis for complaint, she may not be subject to retaliation for complaining about discrimination even if her claim for discrimination does not prove to be true. *See, e.g.*, *Kelly v.*

*Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14-15 (2d Cir. 2013) (*per curiam*).

I conclude that plaintiff has introduced sufficient evidence to create a genuine issue of material fact as to her retaliation claim. It is clear that plaintiff engaged in protected activity when she filed her CHRO complaint, and equally clear that defendant was aware of this activity. Plaintiff was then terminated, undoubtedly an adverse action. And the investigation which led to plaintiff's termination began just six weeks after she filed her CHRO complaint. At least at the *prima facie* stage, a plaintiff may prove causation indirectly through temporal proximity, and the Second Circuit has held that a span of as many as five months may support an inference of causation at this stage. *See Zann Kwan*, 737 F.3d at 845.

Defendant has put forth a sufficient non-retaliatory basis for plaintiff's firing, namely her violation of the workplace policies concerning personal computers. The question thus becomes whether plaintiff is able to show pretext, and I find that, for summary judgment purposes at least, she can. The evidence in this case clearly indicates that the relationship between plaintiff and DeMarco, in particular, was marked by intense personal antipathy. Read favorably to plaintiff, the email chains regarding the beginning of the investigation that ultimately led to plaintiff's removal has an unmistakable flavor of a witch hunt. DeMarco and her colleagues discuss how excited they are to catch plaintiff in a violation, and they specifically discuss taking precautions to avoid looking like they were retaliating for plaintiff's CHRO complaint. A jury could reasonably look at all of this and conclude that the investigation was not motivated by a neutral desire to enforce workplace printer rules but rather by the need for an excuse to punish a troublemaker who engaged in protected activity of complaining about discrimination. Accordingly, I will deny summary judgment as to plaintiff's retaliation claim.

*Discrimination*

Plaintiff's discrimination claim under Title VII is also subject to the *McDonnell-Douglas* burden-shifting formula. To prevail on her claim of racial discrimination, plaintiff must first show facts to establish a *prima facie* case: (1) that she was a member of a protected class; (2) that she was qualified for her position; (3) that she suffered an adverse employment action; and (4) that the circumstances of the adverse action give rise to an inference of discrimination. *See, e.g.*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). If plaintiff makes out this *prima facie* case, then the burden shifts to defendant to articulate a legitimate, non-discriminatory basis for termination. *Ibid.* Once defendant has advanced such a reason, the burden shifts back to plaintiff to prove that the defendant's justification was in fact pretext for discrimination. *Ibid.*

Here, the parties do not dispute that plaintiff was a member of a protected class, indeed that she was the only Hispanic clinician at CJTS. Nor do they dispute that she was qualified for her position. And her termination is undoubtedly an adverse employment action, even if many of the incidents of which plaintiff complains may not qualify as adverse actions for purposes of plaintiff's discrimination claim. *See Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) ("To be adverse, the change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.").[1] The question, then, is whether plaintiff can show that her termination took place under circumstances giving rise to an inference of discrimination, and whether plaintiff can show pretext.

---

[1] Because the threshold for adverse actions is significantly lower in retaliation actions, several of the other incidents plaintiff describes, especially the repeated attempts to transfer, may possibly qualify as adverse actions for purposes of her retaliation claim at trial even if they don't suffice for purposes of her discrimination claim. *See Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Although it is a close question, I conclude that plaintiff has introduced enough evidence to establish her *prima facie* case for purposes of summary judgment. Plaintiff was the only Hispanic clinician at CJTS, and it is clear that DeMarco felt considerable personal antipathy toward her. Plaintiff has adduced several examples of coworkers (none of whom share her ethnic background) who received more favorable treatment than she did, both as to lesser matters like evaluations and as to the enforcement of the Department's personal-use policy. *See* Doc. #44-3. And much of the conflict arose out of the bilingual stipend, which arguably singled plaintiff out for significant additional work (in exchange for a meager $1,000 stipend) on the basis of her ethnic background. I also find that these facts are enough for plaintiff to show pretext, especially in light of the evidence already discussed in the retaliation context, and therefore that the evidence is enough to create a jury issue whether plaintiff was subject to discrimination.

Defendant argues that plaintiff must show not only that defendant's proffered reason for her termination was pretextual but furnish additional evidence suggesting that the real motive was discriminatory. Doc. #34-1 at 5–6. This is not quite right, because the Supreme Court held in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146–47 (2000), that a showing of pretext, on top of plaintiff's *prima facie* case, will usually be enough to support an inference of discrimination by the trier of fact. *See also Cross v. New York City Transit Authority*, 417 F.3d 241, 249 (2d Cir. 2005). Indeed, the Second Circuit has held that the term "pretext" can be confusing, as it suggests that a plaintiff must prove the employer's proffered rationale utterly false and pretextual, not simply that it was incomplete and that ultimately "the adverse action was motivated in part by discrimination." *Henry*, 616 F.3d at 156–57. Here I conclude, following *Reeves*, that the circumstances giving rise to an inference of discrimination plus the evidence

9

indicating pretext is enough to support jury consideration of whether plaintiff was the victim of unlawful discrimination.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Doc. #34) is DENIED.

It is so ordered.

Dated at New Haven this 26th day of March 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge