# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARGARITA HERNANDEZ,<br>    *Plaintiff,*<br><br>v.<br><br>DEPARTMENT OF CHILDREN AND FAMILIES,<br>    *Defendant*. | No. 3:16-cv-00864 (JAM) |

## RULING GRANTING DEFENDANT'S
## MOTION FOR RECONSIDERATION

Plaintiff Margarita Hernandez has brought this Title VII action alleging racial discrimination and retaliation by defendant Connecticut Department of Children and Families (DCF). This Court earlier entered a ruling denying defendant's motion for summary judgment, and defendant now moves for reconsideration of that ruling on two grounds: (1) that the Court did not consider the effect of an arbitral award in defendant's favor, and (2) that the Court mistakenly characterized plaintiff's comparator evidence.

I will grant the motion for reconsideration. Although I do not agree with defendant that the arbitration decision requires plaintiff to introduce strong evidence that it was wrong, I conclude that the arbitration decision is nonetheless evidence that may and should be considered for purposes of summary judgment. I also conclude that plaintiff's comparator evidence is substantially weaker than I previously ruled. In light of these additional considerations, I now conclude that there is no genuine issue of fact for trial as to plaintiff's discrimination claim but that there still remains a genuine issue for trial as to plaintiff's retaliation claim.

## BACKGROUND

The factual background of this case is set forth at length in my earlier ruling on the motion for summary judgment. *See Hernandez v. Dep't of Children and Families*, 2018 WL 1472516, at *1–2 (D. Conn. 2018). My prior ruling did not discuss the fact that plaintiff grieved and challenged the termination of her employment in accordance with her union's rules and that this ultimately led to an arbitrator for the Voluntary Labor Arbitration Tribunal concluding in June 2017 that there was "just cause" for the termination of plaintiff's employment. *See* Doc. #38-1. The bulk of the arbitrator's decision concerns the facts of plaintiff's alleged misconduct involving her misuse of DCF computers for plaintiff's personal business reasons. Doc. #38-1 at 1-13. The arbitrator also concluded in a single paragraph at the end of the ruling that plaintiff had not been subject to "disparate treatment":

> The Union argues disparate treatment. However, in none of the cited cases had the employee received a formal counseling about something as serious as plugging a file-laden personal thumb drive into a state computer and accessing files from it; but then in direct and repeated violation of that formal counseling, the employee thereafter had committed the same offense numerous additional times. Moreover, the grievant on her DCF computer accessed her personal files from her thumb drive to advance her private practice, an aggravating consideration. And finally, the grievant as well was insubordinate, and sought to hide that fact, by hiding a personal printer tucked under her desk and covered over with a cardboard box, in an obvious effort to hide her insubordinate behavior from her supervisor. The termination of the grievant did not constitute disparate treatment.

*Id*. at 14.

## DISCUSSION

The Court is ordinarily reluctant to grant a motion for reconsideration but of course has a duty to do so if a party points to controlling decisions or material facts that the Court has overlooked. *See, e.g., Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir.

2012). I will first address defendant's argument concerning the arbitration award before turning to address defendant's argument about plaintiff's comparators.

*Arbitration award*

In light of the arbitrator's decision in its favor, defendant relies on the Second Circuit's decision in *Collins v. New York City Transit Authority*, 305 F.3d 113 (2d Cir. 2002), to argue that summary judgment should be granted in its favor. Although I agree that the arbitration decision warrants evidentiary weight for purposes of my summary judgment ruling, I don't agree that *Collins* applies to this case to require that plaintiff make a special strong showing that the arbitration decision was wrong.

In *Collins*, the Second Circuit acknowledged that "a negative arbitration decision rendered under a CBA does not preclude a Title VII action by a discharged employee." *Id.* at 119. It was confronted with what weight—if any—to give to an arbitral decision that was made as part of an employee's disciplinary process and that was necessary to the employee's termination of employment. The court concluded that "[w]here an employee's ultimate termination depends upon, and is allowed by, a decision of an independent and unbiased arbitrator based on substantial evidence after a fair hearing, the arbitration decision has probative weight regarding the requisite causal link between an employee's termination and the employer's illegal motive." *Id.* at 115. The court explained that "a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link," and "[w]here, as here, that [arbitral] decision follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact—*e.g.*, new evidence not

3

before the tribunal—or that the impartiality of the proceeding was somehow compromised." *Id.* at 119.

As the facts of *Collins* makes clear, the arbitral decision there took place as an integral part of the termination process. More recently, the Second Circuit has held "that *Collins* is applicable only to decisions of a tribunal to which an employer has contractually surrendered the final power to discipline or discharge employees." *Cortes v. MTA New York City Transit*, 802 F.3d 226, 233 (2d Cir. 2015) (declining to apply *Collins* to after-the-fact state administrative agency decision).

The reason for this limitation on *Collins* is clear. It is one thing (as in *Collins*) if an arbitral decision is itself a step along the way of the termination process. In that context, the intervening involvement of a neutral arbitrator obviously tends to vitiate the likelihood that any illicit motive of an employer's management actually caused the employee's termination.

But it is wholly another matter (as in the present case) if the arbitrator's decision comes *after* the termination has already occurred. In that context, the proverbial horse is already out of the barn, and it is illogical to suggest that the arbitrator's after-the-fact decision negates or attenuates the causal link between an illicit motive and a termination decision. The arbitration decision here came more than a year after defendant terminated plaintiff's employment.

Defendant cites a yet more recent unpublished decision of the Second Circuit in *Diggs v. Niagara Mohawk Power Corp.*, 691 F. App'x 41 (2d Cir. 2017). Although it is true that *Diggs* appears to have applied *Collins* to a post-termination arbitral decision, *Diggs* is a non-precedential decision that did not acknowledge the limitations placed on *Collins* by *Cortes*, much less discuss the significance of the fact that the arbitration there occurred after termination. Accordingly, I conclude that *Diggs* does not require me to apply the *Collins* rule here.

4

In short, *Collins* does not require plaintiff to make a strong showing that the arbitration decision itself was wrong or biased. Still, the arbitration decision is relevant evidence and may be accorded evidentiary weight by the Court for purposes of summary judgment and by the jury at trial. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 (1974) (noting that arbitration decision "may be admitted as evidence and accorded such weight as the court deems appropriate"). Even according it evidentiary weight, I do not conclude that—standing alone—the arbitration decision negates the existence of a genuine issue for trial as to either of plaintiff's claims for discrimination or retaliation.

### *Plaintiff's comparators*

My summary judgment ruling concluded that it was a "close question" whether plaintiff had introduced enough evidence to sustain her discrimination claim, and I also stated that "[p]laintiff has adduced several examples of co-workers (*none of whom share her ethnic background*) who received more favorable treatment than she did, both as to lesser matters like evaluations and as to the enforcement of the Department's personal-use policy." Doc. #52 at 9 (emphasis added). But as defendant's motion for reconsideration correctly states—and without contradiction from plaintiff—six of plaintiff's alleged comparators were also of the same Hispanic background (among other comparators who were not Hispanic). *See* Doc. #54-1 at 4; Doc. #58 at 3-4. It is clear that I misunderstood the record in this respect, and I conclude that this additional evidence tips the balance against plaintiff's discrimination claim for summary judgment purposes, especially in view of my consideration now of the arbitrator's additional determination that plaintiff was not the victim of disparate treatment. Doc. #38-1 at 14.

Plaintiff argues that "an employer may not escape liability for discriminating against a given employee on the basis of race simply because it can prove it treated other members of the

5

employee's group favorably." Doc. #58 at 3 (citing *E.E.O.C. v. Staten Island Savings Bank*, 207 F.3d 144, 151 n.5 (2d Cir. 2000)). I agree with this statement, but the issue here is whether there are enough facts to create a genuine issue of racial discrimination for trial, and the absence of Hispanic-specific comparator evidence significantly weakens an already-borderline claim that plaintiff was targeted for termination because of her Hispanic heritage. This is especially so in light of the fact that a non-Hispanic comparator (Kristin Helin) within plaintiff's own department was also terminated for misuse of computers for her personal business. *See* Doc. #34-1 at 27; Doc. #43 at 25.

Although I will now grant defendant's motion for summary judgment as to plaintiff's discrimination claim, the newly considered reasons apply with less force to plaintiff's retaliation claim. Even accepting the arbitration decision as evidence and the lack of Hispanic-specific comparator evidence, I conclude for the same reasons as previously stated in my initial ruling that there remains a genuine issue for trial as to plaintiff's claim of retaliation.

## CONCLUSION

The motion for reconsideration (Doc. #54) is GRANTED. On reconsideration, the Court now GRANTS defendant's motion for summary judgment (Doc. #34) as to plaintiff's Title VII discrimination claim but DENIES defendant's motion for summary judgment as to plaintiff's Title VII retaliation claim.

It is so ordered.

Dated at New Haven this 29th day of May 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge